### CHARLES A. SAVOYE & others *vs.* WILLIAM H. MARSH & others.

A firm in this State made a note payable to their own order, and indorsed it to a firm in New York. *Held*, that a discharge of the makers and indorsers, under the insolvent laws of this State, was not a bar to an action against them, on the note, by the indorsees, who had not proved their claim thereon, under those laws.

ASSUMPSIT on this note: " Boston, Oct. 3d 1843. Ten days after date, we promise to pay to the order of W. H. Marsh & Co. two hundred and fifty six dollars, value received.

Marsh, Hovey & Glines."

The parties submitted the case to the court on the statement of facts which follows : The defendants made the note declared on, and indorsed it, by the name of " W. H. Marsh & Co." to the plaintiffs, before its maturity. The plaintiffs then were, and ever since have been, copartners in business, and inhabitants of and residents in the city and State of New York. The defendants then were, and for a long time afterwards continued to be, inhabitants of Lowell, in this Commonwealth. Two of the defendants, viz. J. M. Hovey and A. Glines, on the 18th of January 1844, made application to a master in chancery, in the county of Middlesex, for the benefit of the insolvent law of this Commonwealth, and such proceedings were thereafter had, that on the 1st of March 1844, the said master granted to them a certificate of discharge from all their debts, pursuant to the provisions of said insolvent law. All the proceedings before the master were in due form.

It was agreed by the parties that Marsh should be defaulted; and that, if the court, upon the foregoing facts, should be of opinion that the plaintiffs can maintain their action against Hovey & Glines, they should be defaulted; and that, if the court should be of opinion that the plaintiffs cannot maintain their action, they should have leave to discontinue against Hovey & Glines, paying them costs, and should take judgment against Marsh alone.

*C. H. Warren,* for the plaintiffs, cited *Braynard v. Marshall,* 8 Pick. 196.

*E. Smith,* for the defendant, cited *Osborn* v. *Adams,* 18 Pick. 245 ; *Agnew* v. *Platt,* 15 Pick. 417 ; and *Betts* v. *Bagley,* 12 Pick. 572.

DEWEY, J. We are fully aware of the difficulties that arise in deciding questions involving the validity of insolvent laws enacted by the authority of one State, and attempted to be applied to citizens of other States. There has not been an entire uniformity of opinion as to the actual decisions of the supreme court of the United States upon this subject. We have supposed that it was the opinion of a majority of the members of that court, that a discharge under a state insolvent law had no effect upon the rights of a party to a contract, where such party was not a citizen of the State in which such discharge was granted, and when the contract was not, by its terms, to be performed within the State enacting such insolvent law. Such was the doctrine of *Braynard* v. *Marshall,* 8 Pick. 196. Similar views were expressed by this court in the opinions given in the cases of *Betts* v. *Bagley,* 12 Pick. 580, and *Agnew* v. *Platt,* 15 Pick. 417.

The principle already stated, and which is sufficient for the present case, embraces the exception, that the contract is not, by its terms, to be performed in the State enacting the insolvent law.

The decided cases seem to go further, and hold the doctrine, that state insolvent laws can only operate upon those who are citizens of the State in which such law is enacted. In *Springer* v. *Foster,* 2 Story R. 387, Mr. Justice Story says, " the settled doctrine of the supreme court of the United States is, that no state insolvent laws can discharge the obligations of any contract made in the State, except such contract is made between citizens of that State." As sustaining the same principle, I will refer to *Shaw* v. *Robbins,* in 12 Wheat. 369, *note ; Ogden* v. *Saunders,* 12 Wheat. 213 ; *Boyle* v. *Zacharie,* 6 Pet. 348, 635; *Woodhull* v. *Wagner,* 1 Bald 296 ; and *Fray* v. *Kirk,* 4 Gill & Johns. 509.

It seems also to be held that this restriction upon the power of the individual States, limiting the operation of their insolvent laws to their own citizens, is to be as much regarded by the state judicial tribunals as by the federal courts. 6 Wheat. 131. 1 Bald. 296. 4 Gill & Johns. 509.

The distinction, as to the forum where the party elects to institute his action, may be very material in regard to all that is mere remedy. The state courts may, in all actions instituted therein, give full force and effect to their own laws as to forms of proceeding, rights of attachment, holding to bail, imprisoning the body on execution, and the like ; but a state insolvent law, operating upon the contract directly, and discharging the party from all liability thereon, must, as to those to be affected by it, have the same operation in both tribunals. If it be a constitutional law — if, in its provisions, it do not transcend the limits of state authority — it must be valid in all tribunals, state or national ; if otherwise, it must be held invalid and inoperative in all.

The case of *Braynard* v. *Marshall*, 8 Pick. 196, was a case where the action was instituted in a different State from that which had enacted the insolvent law, and it may be supposed that, for this reason, the discharge under the insolvent law of New York was held inoperative in that case ; but we apprehend that the decision was placed upon the broad principle, that the discharge under the insolvent law of New York was invalid every where except as against citizens of the State of New York ; and that if such suit had been instituted in the State of New York, by the same party, (a citizen of Massachusetts,) the tribunals of New York would, under the decisions of the supreme court of the United States, have held a discharge obtained under their laws inoperative as respects a citizen of Massachusetts.

The promissory note which is the subject of the present action was made by the defendants at Boston, payable in ten days after date to the order of W. H. Marsh & Co. and indorsed by the payees to the plaintiffs, who then were, and still continue to be, citizens and residents in the State of New

York. The note was not, upon its face, made payable at any particular place, and was therefore legally payable to the holder. The makers of this note, by giving it a negotiable character, contracted with whomsoever might be the legal indorsee at the time it became payable, to pay him the same ; and the plaintiffs having become such indorsees, it is to all intents and purposes a contract with a citizen of the State of New York, and to be dealt with as any other contract made by a citizen of Massachusetts with a citizen of New York. We are therefore of opinion that, upon the facts stated by the parties, the plaintiffs are entitled to judgment.

We assume that the plaintiffs are *bonâ fide* holders of the note, and that it has been actually, and not colorably, transferred to, and is now holden by citizens of New York, who became parties thereto before its maturity.

According to the agreement of the parties, all the defendants are to be defaulted, and judgment is to be rendered for the plaintiffs.